**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BRENT EDWARD MARTIN, #Z-746,** | : | |
| **Plaintiff,** | : | |
| **vs.** | : | **CIVIL ACTION 21-0230-KD-N** |
| **ZACHARY S. HARD,** | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

This action is before the Court on Plaintiff's Amended Petition (Doc. 23, PageID.246). The Amended Petition contains new claims against new Defendants and will be addressed in this Report and Recommendation. The Amended Petition also contains discovery requests, which are addressed in a separate order. The Amended Petition has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). After careful consideration, it is recommended that the Amended Petition's claims against Lt. Darryl McMillian and Dr. Jared Burkett be denied and that two new actions be opened with one action containing the claims against Lt. McMillian and the other action containing the claims against Dr. Burkett, with a copy of the Amended Petition (Doc. 23) and this Report and Recommendation being placed in each new action.

### I. Nature of Proceedings.

### A. Screening.

Because Plaintiff is proceeding *in forma pauperis* (Doc. 7, PageID.31), the

undersigned is required to screen Plaintiff's Amended Petition and to dismiss it or a claim that is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  In conducting this screening, the undersigned found that the claims against Lt. Darryl McMillian and Dr. Burkett violate Rule 20(a)(2) of the Federal Rules of Civil Procedure because the claims against them arise from different occurrences than are contained in the original complaint.  *Moon v. Newsome,* 863 F.2d 835, 837 (11th Cir.) (a *pro se* litigant "is subject to the relevant law and rules of court including the Federal Rules of Civil Procedure"), *cert. denied*, 493 U.S. 863 (1989).

**B.  Complaint.** (Doc. 1)

The discussion below describes Plaintiff's allegations in the original complaint and in the Amended Petition in addition to shortcomings in the claims against Lt. McMillian and Dr. Burkett.  The original complaint names Officer Zachary S. Hard as the sole Defendant.  (Doc. 1 at 9, PageID.9).  Plaintiff, a death-row inmate at Holman Correctional Facility ("Holman"), claims that Defendant Hard did not try to stop him from being assaulted by inmate McMillian when he went to shower on September 28, 2019 at around 7:15 p.m.  (*Id.*).  He further claims that Defendant Hard did not charge inmate McMillian with a disciplinary for assault or possession of a knife.  (*Id.*).

The supporting allegations reflect that due to malfunctioning electronic equipment for opening cell doors and to an officer shortage, Defendant Hard, the only officer on duty, had inmate Towns open the individual cells with a crank key after Defendant Hard pulled the lever to open the slot above each cell.  (*Id.* at 4, PageID.4).  When Plaintiff headed to the showers and passed inmate McMillian's cell, inmate McMillian attacked

2

him with a machete-type knife, deeply slashing the inside of his left wrist and deeply cutting his fingers on both hands when he attempted to take the knife from inmate McMillian. (*Id.* at 5, PageID.5). Plaintiff was surprised that inmate McMillian's door was open because earlier in the week they had argument that officials were unable to resolve. (*Id.* at 4-5, PageID.4-5). Consequently, plans were made to move one of them and for them not to have contact during shower time. (*Id.* at 5, PageID.5). During the attack Defendant Hard is alleged to have done nothing while he waited for other officers to come. (*Id.*). When the officers arrived, inmate McMillian threw the knife in Plaintiff's cell. (*Id.*). Plaintiff's injuries were sutured at Holman except for the left hand's fingers, which he could not move; they were treated at USA (University of South Alabama) on September 29, 2019, except for one finger. (*Id.* at 6, PageID.6). Two days later, the untreated finger's tendon was surgically reattached at USA. (*Id.*).

On the night of the assault, both inmate McMillian and Plaintiff were written disciplinaries for fighting without a weapon by Defendant Hard. (*Id.* at 6, PageID.6). Plaintiff went to disciplinary court about a week later, where Defendant Hard testified that Plaintiff threw no punches. (*Id.*). Plaintiff was told he was found not guilty, but he received a copy of the report in May 2020, showing he was not guilty due to a procedural error. (*Id.*). Shortly after the assault, Defendant Hard was transferred to another prison. (*Id.*).

Defendant Hard has waived service of process and has filed his Answer and Special Report. (Docs. 21, 22).

## II.  Amended Petition. (Doc. 23)

### A.  Claim Against Lt. McMillian. (Doc. 23 at 1, PageID.246)

Plaintiff wants to add Lt. Darryl McMillian as a defendant.  (*Id.* at 1, PageID.246). In a disconnected phrase, Plaintiff simply asserts – "In my original petition."  (*Id.*).  Lt. McMillian, however, was not mentioned in his original complaint.  Only inmate McMillian and Defendant Hard were referred to in the original complaint.  Plaintiff then proceeds to allege that on October 18, 2021, while his hands were cuffed behind his back, Lt. McMillian sprayed him in the face with a fire extinguisher, which caused blindness in his right eye for two days.  (*Id.*).

Prior to the spraying, Plaintiff alleges that he asked Officer Moody to tell the shift commander that the shift commander and he needed to talk.  (*Id.*).  No one came to talk with him, and he could see Lt. McMillian and other officers inside the cubicle.  (*Id.*).  So, he set a small fire in his cell to get their attention.  (*Id.*).  Before Lt. McMillian and other officers reached his cell, he had put out the small fire.  (*Id.*).  Even though his cell was not damaged, Lt. McMillian ordered him to turn around and be handcuffed.  (*Id.*).  When the cell door was opened, Lt. McMillian sprayed him in the face with the fire extinguisher.  (*Id.*).  Plaintiff was taken to the infirmary where he was kept under constant surveillance.  (*Id.* at 2, PageID.247).  He "believe[s] [McMillian] assaulted [him] because of [his] lawsuit against Office[r] Hard[, as he has] been threatened by [McMillian] on numerous occasions."  (*Id.*).  He pled guilty in a disciplinary proceeding to setting the small fire and was punished.  (*Id.*).  For relief, he seeks $250,000 in punitive damages for the assault and for his right eye that is still suffering.  (*Id.*).

## 1. Retaliation Claim.

To state a retaliation claim, Plaintiff must allege: "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's

allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  The Court notes that the filing of a lawsuit is a constitutionally protected activity. *Siskos v. Sec'y, Dep't of Corr.*, 817 F. App'x 760, 765 (11th Cir. 2020).[1]

Plaintiff, however, does not allege that Lt. McMillian's spraying of him with a fire extinguisher adversely affected his ability to pursue the present action.  *See Smith.* 532 F.3d at 1277.  In addition, Plaintiff's allegations also must establish a causal connection between the retaliatory action (spraying) and a constitutionally protected activity (this lawsuit).  Only one vague statement refers to a connection - he "believe[s] [McMillian] assaulted [him] because of [his] lawsuit against Office[r] Hard[, as he has] been threatened by [McMillian] on numerous occasions."  (Doc. 23 at 2, PageID.247). Plaintiff's burden is to show that his protected conduct was a motivating factor behind Lt. McMillian's spraying.  *Jacoby v. Baldwin Cnty.,* 666 F. App'x 759, 762 (11th Cir. 2016).  As written, Plaintiff's allegations are vague and conclusory.  *Fullman v. Graddick*, 739 F. 2d 553, 556-57 (11th Cir. 1984) (holding that vague and conclusory allegations are subject to dismissal).  Therefore, they fail to state a claim of retaliation upon which relief can be granted.

Notwithstanding, no allegations show that Lt. McMillian knew of this lawsuit. Neither are the threats by Lt. McMillian described, nor is any statement made by him at the time of the spraying.  The incident forming the basis of this lawsuit occurred on

---

[1]  "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11TH CIR. R. 36-2 (2005).

October 28, 2019, with Defendant Hard having been transferred shortly thereafter. (Doc. 1 at 7).  This lawsuit was then filed on May 11, 2021, listing Defendant Hard's current address as Fountain Correctional Facility.  (Doc. 1 at 9, PageID.9).  Defendant Hard was served on September 20, 2021 at Fountain.  (Doc. 15, PageID.52).  Whereas the allegations against Lt. McMillian arose on October 18, 2021, and Lt. McMillian is employed at Holman where Plaintiff is located and where the incident that is the basis of this lawsuit occurred.  (Doc. 21 at 1, PageID.246).  Moreover, the Amended Petition contains no allegations that connect Defendant Hard with Lt. McMillian.  *Siskos*, 817 F. App'x at 765 (finding that the inmate plaintiff did not sufficiently allege a causal connection when he failed to allege that the officers who put him in disciplinary lockdown were aware of his habeas petition, or that as result, they were moved to discipline him).

Furthermore, Plaintiff began a fire in his cell.  Plaintiff does not indicate that Lt. McMillian knew that the fire had been put out.  Thus, the spraying of the fire extinguisher may have been a reasonable action once Plaintiff's cell door was open, even with Plaintiff exiting.  *See Maldonado v. Unnamed Defendant*, 648 F. App'x 939, 955 (11th Cir.) (finding the officer was entitled to qualified immunity because it was not clear whether the inmate was pepper-sprayed in retaliation for filing a grievance or in an effort to subdue him to obtain compliance with the lock-down order), *cert. denied,* 137 S.Ct. 512 (2016); *Thomas v. Warner,* 237 F. App'x 435, 438 (11th Cir. 2007) (finding *sua sponte* the allegations showed that the prisoner was pepper-sprayed for disobeying the sheriff's order to back down instead of in retaliation for filing a grievance); *see also O'Bryant v. Finch*, 637 F.3d 1207, 1219 (11th Cir.) (holding that the prisoner failed to

6

present evidence of retaliatory animus because he would have been subject to the same disciplinary charges for his improper activity regardless of having filed grievances), *cert. denied*, 568 U.S. 949 (2012).  Thus, another reason exists for Defendant McMillian's spraying him other than retaliation, and there is an absence of specific information to support a claim of retaliation.  Accordingly, the undersigned finds that Plaintiff has failed to state a plausible claim of retaliation.

## 2.  Eighth Amendment Claim.

The Court's screening of this claim also includes whether Plaintiff has alleged an Eighth Amendment claim.  Whenever prison officials are accused of violating the Eighth Amendment's prohibition of cruel and unusual punishment by using excessive physical force, "the core judicial inquiry is. . . : whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (citing *Whitley v. Albers*, 503 U.S. 1, 9 (1992)).  But excluded from recognition as an Eighth Amendment violation are "*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Wilkins v. Gaddy*, 559 U.S. 34, 37-38, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010).  A "'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."  *Id.* at 38, 130 S.Ct. at 1178 (citation and internal quotations marks omitted) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  The correlation between injury and force is imperfect, but force is what ultimately counts.  *Id.*  To determine whether the force applied by officials was malicious or sadistic,

> [W]e look at "the need for the application of force; the

> relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner." *Id.* (citing *Whitley*, <u>475 U.S. at 321</u>, <u>106 S.Ct. at 1085</u>).  Additionally, we consider "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Whitley*, <u>475 U.S. at 321</u>, <u>106 S.Ct. at 1085</u>.  Not only that, but we must also give a "wide range of deference to prison officials acting to preserve discipline and security," including when considering "[d]ecisions made at the scene of a disturbance."  *Bennett v. Parker*, <u>898 F.2d 1530, 1533</u> (11th Cir. 1990).

*Cockrell v. Sparks*, <u>510 F.3d 1307, 1311</u> (11th Cir. 2007) (emphasis added).

"The extent of injury may also provide some indication of the amount of force applied."  *Wilkins*, <u>559 U.S. at 37</u>, <u>130 S.Ct. at 1178</u> ("As we stated in *Hudson,* not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'") (Citation omitted). *See Cockrell*, <u>510 F.3d at 1311</u> ("'[t]he need for the use of force is established by the undisputed evidence that [the inmate] created a disturbance .... Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.'" (quoting *Bennett v. Parker*, <u>898 F.2d 1530, 1533</u> (11th Cir. 1990))).  *Cf. Barcelona v. Roriguez,* <u>847 F. App'x 739, 741</u> (11th Cir.) (dismissing *sua sponte* an Eighth Amendment claim because the defendant intended to pepper-spray the plaintiff's misbehaving cellmate and no facts were present showing he intended to spray the plaintiff), *cert. denied*, <u>142 S.Ct. 183</u> (2021); *Moore v. Hunter,* <u>847 F. App'x 694, 698</u> (11th Cir.  2021) (holding that the application of pepper spray to an inmate trying to kill himself, which resulted in no discernable injury, did not demonstrate that the defendant acted maliciously or sadistically in violation of the Eighth Amendment); *Chatman v. Roy*, <u>2019 WL 4621676</u>,

at *5-6 (N.D. Ala. 2019) (unpublished) (spraying a fire extinguisher into cell to put out a fire did not violate the Eighth Amendment, but spraying the plaintiff's face is another matter unless the defendant states, e.g., it was inadvertent) (citing *Burke v. Bowns*, 653 F. App'x 683, 698-99 (11th Cir. 2016)).  Thus, Plaintiff has not plausibly alleged sufficient facts to state an Eighth Amendment claim.

### 3.  Rule 20(a)(2) of the Federal Rules of Civil Procedure.

Rule 20(a)(2) provides that:

 (2) . . . Persons . . . may be joined in one action as defendants if:

 (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

 (B) any question of law or fact common to all defendants will arise in the action.

Fed.R.Civ.P. 20(a)(2).  That is, Plaintiff's claims for being assaulted by inmate McMillian on September 28, 2019 arise from an occurrence that is distinct from when Defendant McMillian sprayed him with a fire extinguisher on October 18, 2021.  They arise from different facts, have different questions of law, and have different defendants.  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (The Federal Rules of Civil Procedure allow "multiple claims against a single party . . .[but] [u]nrelated claims against different defendants belong in a different suit, not only to prevent the sort of morass [that a multiple claim and multiple defendant] suit produce[s] but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the

9

required fees.  28 U.S.C. § 1915(g).").

Accordingly, it is recommended that the Amended Petition's claims against Lt. McMillian be denied as they violate Fed.R.Civ.P. 20(a)(2) and that a new case be opened containing the claims against Defendant McMillian since a *pro se* litigant is to be given one opportunity to amend his complaint before his complaint is dismissed. *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018).  It is further recommended that a copy of the Amended Petition (Doc. 23) and this Report and Recommendation be placed in the new case.

**B.  Claim Against Dr. Jared Burkett.**

According to Plaintiff, his pinky finger was x-rayed on September 29, 2019, with a finding by Dr. Rana that there was an "interval reduction of fifth digit proximal interphalangeal joint dislocation."  (Doc. 23 at 2, PageID.247).  On October 1, 2019, his left hand's pinky finger had surgery performed by Dr. Burkett to repair a tendon.  (Doc. 23 at 2, PageID.247).  Plaintiff contends that Dr. Burkett failed to relocate his pinky finger so now he is unable to make a fist and has nerve damage.  (*Id.*).

Since the surgery, Plaintiff had follow-up visits with Dr. Burkett, with his final appointment having been in May 2020.  (*Id.*).  During that visit, Plaintiff complained about his crooked pinky finger.  (*Id.*).  After an x-ray was performed, Dr. Burkett told him that his hand could not be fixed, because he was not a candidate for surgery as his hand had healed and due to extensive rehabilitation needed after surgery.  (*Id.*).  Plaintiff states that he did not become aware of this permanent damage until his last visit.  (*Id.* at 3, PageID.248).  Plaintiff believes he is "still eligible to receive relief[,]" raising that he filed his action on May 10, 2021.  (*Id.*).  Plaintiff claims Dr. Burkett was

10

negligent and failed to fix his dislocated pinky finger.  (*Id.* at 2, PageID.247).

Plaintiff's original claim in this action is against Officer Hard for his "deliberate indifference to a substantial risk of serious physical harm" to him based on being stabbed by another inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994).  To amend the original complaint against Defendant Hard, Plaintiff must satisfy Rule 20(a)(2), which requires that to join persons in one action that the claim against the persons "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences; and [that] any question of law or fact common to all defendants will arise in the action."  Fed.R.Civ.P. 20(a)(2).

Plaintiff's claim alleges that Dr. Burkett committed malpractice and failed to repair his finger.  (Doc. 23 at 2, PageID.247).  The claims against Dr. Burkett arose from different facts than from the facts against Defendant Hard.  And a question of law or fact does not appear to be common between these two claims and two Defendants.  For example, Plaintiff must prove a deliberate indifference to a serious medical need against Dr. Burkett, *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)[2], as compared to a deliberate indifference to a substantial risk of serious physical harm against Defendant Hard, *Farmer, supra.*  Thus, the undersigned recommends that pursuant to Fed.R.Civ.P. 20(a)(2), the claims against Defendant Burkett in the Amended Petition be denied.  *Dipietro v. Barron*, 2019 WL 11879042, at *7 (M.D. Ga.) (holding the inmate's claims of excessive heat were not logically related to

---

[2] The Supreme Court in *Estelle* also concluded that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292.

his claims of deliberate indifference to his dental or mental health care as more than a minimal connection is required between transactions or occurrences), *adopting report and recommendation as modified*, 2020 WL 8969969 (M.D. Ga. 2020); *Royster v. Brown*, 2007 WL 433089, at *1 (N.D. Fla. 2007) (holding the false-report claims of December 29, 2006 were not related to a claim of an inadequate response to a call of January 20, 2007); *Skillern v. Ga. Dep't of Corr. Comm'r*, 379 F. App'x 859, 860 (11th Cir. 2010) (affirming the dismissal of the action for failure to comply with Rule 20(a) because the claims against defendants did not arise out of same transaction, occurrence, or series of transactions or occurrences and being allegedly deliberately indifferent in separate incidents did not provide a connection between the people and events).  It is further recommended that a new case be opened containing the claim against Dr. Burkett, since a *pro se* litigant is to be given one opportunity to amend his complaint before his complaint is dismissed, *Woldeab*, 885 F.3d at 1291, with a copy of the Amended Petition (Doc. 23) and this Report and Recommendation being placed in the new case.

### III.  Conclusion.

Based upon the foregoing reasons, it is recommended that the Amended Petition's claims against Lt. Darryl McMillian and Dr. Jared Burkett be denied and that two new actions be opened with one action containing the claims against Lt. McMillian and the other action containing the claims against Dr. Burkett, with a copy of the Amended Petition (Doc. 23) and this Report and Recommendation being placed in each new action.  *See Johnson v. Georgia*, 2015 WL 877779, at *7 (N.D. Ga.) (dismissing Rule 20(a) violation pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure),

*aff'd*, <u>661 F. App'x 578</u> (11th Cir. 2016).

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* <u>28 U.S.C. § 636(b)(1)</u>; <u>FED.R.CIV.P. 72(b)</u>; S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of <u>28 U.S.C. § 636(b)(1)</u> waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." <u>11th Cir. R. 3-1</u>.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE and ORDERED** this  6th day of April, 2022.


**/s/ KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**