IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRENT EDWARD MARTIN, Z-746,<br>        Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION 22-00175-KD-N |
| | : | |
| DARRYL MCMILLIAN,<br>        Defendant. | : | |
| | : | |

### REPORT AND RECOMMENDATION

Plaintiff Brent Edward Martin, an Alabama prison inmate proceeding on his own behalf, or *pro se*, filed a complaint under 42 U.S.C. § 1983 alleging that Lieutenant Darryl McMillian used excessive force against him. (Doc. 9). This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). This matter is before the Court on Defendant Darryl McMillian's motion for summary judgment.[1] (Doc. 24). For the reasons discussed herein, it is ordered that this motion be **DENIED** at this time, with Defendant McMillian granted leave to file an amended motion for summary judgment at a later point after the discovery as discussed herein.

### I.   BACKGROUND AND FACTUAL ALLEGATIONS.[2]

On October 18, 2021, Plaintiff Martin started a fire within his death row cell at Holman Correctional Facility, to which Defendant Lieutenant McMillian responded (along with other officers). Upon arrival at Martin's cell, Martin was ordered to submit to restraints, and he complied. Martin was handcuffed to the rear, and his cell door was rolled open by the cubical

---

[1]   The Court converted Defendant's Answer and Special Report to a motion for summary judgment. (Doc. 20).
[2]   The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

operator. When the cell door opened, Defendant McMillian sprayed a fire extinguisher. The undisputed facts stop here.

Plaintiff Martin alleges in his complaint (Doc. 9) that he started the fire to gain the attention of officers because he had been receiving threats and his previous attempts to speak to an officer had failed. Specifically, Martin alleges he stopped Officer Moody that morning, during tier checks, and informed him of the need to speak with the shift commander, but no one ever came to speak with him. Martin then placed a mirror in his door's tray-slot, and he was able to see three or four officers inside the cubicle; however, the officers all ignored his "waves" for their attention. (*Id*. at 4). Thereafter, another officer (whose name Martin does not know) passed by his cell, totally ignoring him. Thus, Martin decided to "light a small fire on the floor" of his cell, near the door of the cell, with the "intent [] to send a smoke signal to alert the CO's." (*Id*.). According to Martin, smoke began to exit the open tray-slot, and he immediately saw the officers leave the cubicle and walk toward his cell. Martin states he grabbed a cup of water from his sink and extinguished the fire, but "there was smoke still exiting the opening below" when Lieutenant McMillian and Officers Quarles and McCants arrived at his cell at approximately 8:00 a.m. (*Id*.). Martin complied with the order given to submit to handcuffs – meaning Martin turned around, and an officer reached through the tray-slot opening and handcuffed Martin behind his back. Upon turning to face the door, Martin saw (through the window at the top of the cell door) Defendant McMillian standing directly in front of his door. As the cell door opened, Martin alleges Defendant McMillian "immediately pointed the fire extinguisher which he was holding and shot it directly into my face." (*Id*. at 5). Martin alleges Defendant McMillian sprayed him once in the face, and it felt like he was punched in the eye, and he lost vision. Martin further alleges Officers Quarles and McCants removed him from his cell, and Defendant McMillian

ordered the officers to take him to the healthcare unit, where he received medical attention for two days, namely the flushing of his eyes, before returning to his cell on October 20, 2021. Martin alleges that when he returned to his cell, it was "trashed" because the fire extinguisher spray ruined everything inside the cell. Martin requests punitive damages in the amount of $250,000 for the force used against him.

Defendant McMillian has answered the complaint and submitted a special report denying the allegations asserted against him that he sprayed Martin directly in the face with the fire extinguisher. (*See* Doc. 20-1 at 2). According to Defendant McMillian, when he arrived at Martin's cell, the fire was not extinguished, and Martin failed to comply with a direct order to extinguish the fire. (*Id.*). Defendant contends that once Martin was handcuffed and the cell door opened, "because smoke was still "billowing from Martin's cell, [McMillian] sprayed the fire extinguisher into Martin's cell to extinguish the fire." (*Id.*). Defendant contends that any spray of the fire extinguisher to Martin's face was inadvertent and unintentional. (*Id.*). Defendant further contends that once Martin was removed from his cell, his cell was cleaned and decontaminated, he was taken to the healthcare unit for medical assessment and treatment, and he received a disciplinary charge for violation of Administrative Regulation No. 403, Rule No. 926 – Arson. (*Id.*). Defendant McMillian supports his position with the submission of this personal affidavit, Disciplinary Report for Arson charges brought against Martin, the Incident Report, Duty Officer Report, Medical Records, Classification of Inmate Summary, and Inmate Movement History.

After review of the pleadings, the Court ordered that Defendants' Answer, Special Report, and exhibits (Docs. 20; 20-1, 20-2; 20-3) be treated as a motion for summary judgment as is authorized is prisoner cases. (Doc. 24). Plaintiff submitted an unsworn response to the

motion (Doc. 25),[3] as well as a Motion for Discovery (Doc. 22), which the Court will address in a separate order to follow.

Accordingly, this motion for summary judgment is now ripe for consideration.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to

---

[3]    Plaintiff originally filed his Response following Defendant's submission of his Answer and Special Report. (*See* Doc. 21). The Court informed Plaintiff, however, that the document was unsworn (failing to meet the requirements of an unsworn statement to substitute a sworn affidavit under 28 U.S.C. § 1746) and unsigned, and the Response was Stricken by the Court as improperly filed pursuant to Fed. R. Civ. P. 11(a), with leave granted to resubmit the Response or file any other response by June 12, 2023. (*See* Doc. 24 at 2, 3). On April 26, 2023, Plaintiff refiled the Response – signed but still unsworn. (*See* Doc. 25).
    Pursuant to § 1746, an unsworn statement may substitute for a sworn affidavit, but "[t]he declarant must (1) date and sign the document, and (2) subscribe its content as "true," (3) under "penalty of perjury," (4) in substantially the above-quoted pattern language." *Roy v. Ivy*, 53 F.4th 1338, 1348 (11th Cir. 2022). The current Response contains a signature and no other necessary elements likening it to an affidavit. Accordingly, the unsworn statement will not be considered as evidence by the Court in opposition to summary judgment. *See Id*. (Prisoner's unsworn statement could not be considered on summary judgment of deliberate indifference claim since in lacked "penalty of perjury" language.).

the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24, 106 S. Ct. 2548.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" *Id*. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**III.    DISCUSSION AND ANALYSIS**

**A. Immunity Defenses.**

Defendant McMillian has claimed the defenses of absolute and qualified immunity from suit. (Doc. 20 at 4). Given that it is unclear from the complaint whether Plaintiff attempts to sue Defendant in his official or individual capacity, the Court briefly addresses both.

To the extent Plaintiff is proceeding against him in his official capacity, his claim fails. The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998). "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).  Accordingly, the correctional officer defendant in this action, who was employed by the State of Alabama Department of Corrections at the time of the incident alleged in the complaint, is immune from suit in his official capacity. *See Parker v. Williams*, 862 F.2d 1471, 1476 n.4 (11th Cir. 1989), *overruled on other grounds in Turquitt v. Jefferson Cnty.*, 137 F.3d 1285 (11th Cir. 1998) ("[S]uits against an official in his or her official capacity are suits against the entity the individual represents."). Thus, Lieutenant McMillian, in his official capacity, is entitled to summary judgment as a matter of law.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).  While there is no doubt that Defendant in this action was acting within his discretionary authority at all times when the acts in question occurred, the Eleventh

Circuit has made clear that the defense of qualified immunity "is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (Qualified immunity does not extend to an officer who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." (internal quotation marks omitted and alteration in original). Accordingly, the Court turns to consider whether Plaintiff has carried his burden of showing that excessive force was used against him in violation of the Eighth Amendment.

### B.  Claims Under 42 U.S.C. § 1983.

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). There is no dispute that the Defendant McMillian, as an Alabama Department of Corrections officer, is a state actor for purposes of this action. Thus, to establish his asserted claims, Plaintiff must establish that that Defendant McMillian, personally, acted to deprive him of a constitutional right; here, the Eighth Amendment. *Patel v. Lanier Cny.*, 969 F.3d 1173, 1185 (11th Cir. 2020) (Plaintiff bears the burden of proving that the defendants used excessive force.).

The Eighth Amendment's prohibition against cruel and unusual punishment, U.S. Const. amend. VIII, governs the use of force by prison officials against convicted inmates. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  In order to establish an Eighth Amendment

7

excessive force claim against the defendants, Plaintiff must prove both an objective and subjective component. That is, he must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation and that the defendants "act[ed] with a sufficiently culpable state of mind; i.e., that they acted maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citations omitted); *see also Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1196 (11th Cir. 2003) (to satisfy the object conduct, the plaintiff must show the complained of conduct "shocks the conscience"). Both inquiries are contextual, and "the objective harm inquiry is responsive to contemporary standards." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). While not every "malevolent touch" by a prison guard amounts to excessive force, a *de minimis* use of force is actionable under the Eighth Amendment if it is "repugnant to the conscience of mankind." *See Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quotation marks omitted).

"[W]here a prison security measure is undertaken to resolve a disturbance . . . that indisputably poses significant risks to the safety of inmates and prison staff, . . . the question of whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21; *see also Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). Factors relevant to this determination include the "need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Skrtich*, 280 F.3d at 1300. The absence of injury is one factor to be considered in determine whether or not force used was conceivably necessary and may indicate the amount of force used. *Wilkins*, 559 U.S. at 37. Once

8

the need for force ceases, any continued force applied can constitute an Eighth Amendment violation. *Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991). When considering these factors, courts afford "a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Fennell v. Gilstrap*, 559 F. 3d 1212, 1217 (11th Cir. 2009) (quotation marks omitted).

The Eleventh Circuit has made clear "[t]he need to extinguish a fire in a prison is unquestionably great as a matter of prisoner safety, officer safety, and public safety", and an officer does not violate the Eighth Amendment by spraying a fire extinguisher into an inmate's cell in response to a fire in the cell. *Burke v. Browns*, 653 F. App'x 683, 698-99 (11th Cir. 2016).[4] It is another matter, however, as to whether the spraying of the fire extinguisher in the plaintiff's face was a constitutional violation. Martin has submitted sworn testimony in his verified complaint that Defendant McMillian did this. (Doc. 9 at 5, 7). Defendant McMillian affirms by affidavit, that he did not. Instead, he asserts the spray was deployed in a good faith effort to protect Martin and other inmates and to restore discipline. (Doc. 20-1 at 3; Doc. 20 at 20-21). Defendant contends that no reasonable jury could believe Plaintiff's claim of excessive force because it is not borne out by the record, pointing specifically to statements made by Martin to the healthcare unit staff following the incident, where Martin is reported to have stated that he "walked into cloud of chemical [after] sprayed" (Doc. 20 at 9; Doc. 20-3 at 14). Accordingly, Defendant asserts that Martin "fails utterly to prove the use of any force by McMillian, much less a force so excessive as to be deemed malicious and sadistic" and a constitutional violation. (Doc. 20 at 9, 21-21).

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

Turning to the record, the undersigned finds it is not as clear cut as Defendant suggests. No doubt, Defendant has offered far more evidence to consider on his behalf. This however is not the question at the summary judgment stage. Instead, the "question is simply whether there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Sears v. Roberts*, 922 F.3d 1199, 1207 (11th Cir. 2019) (internal quotation and citation omitted). "While a plaintiff may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial, . . . courts routinely and properly deny summary judgment on the basis of a party's sworn testimony," *Id*. (internal alterations, quotation marks and citations omitted). Here, Martin relies on the sworn statement of his verified complaint,[5] which "'cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature.'" *Id*. at 1208 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)). Martin's allegations are none of these.

Indeed, a reasonable juror could find that the record evidence supports Martin's version of the incident. For instance, Martin claims that he had already extinguished the fire when the officers arrived at his cell. The record supports this to the extent that Martin did not receive a

---

[5] While a nonmoving party generally cannot defeat summary judgment by reliance on his pleadings, a verified pleading may be treated as an affidavit and considered on summary judgment. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 n.23 (11th Cir. 2011). Here, Martin's complaint is sets out facts based on personal knowledge, and he has signed it under penalty of perjury, affirming "that the facts set out in [his] complaint are true and correct." (Doc. 9 at 9); *see also* Fed. R. Civ. P. 56(c)(4) (To be considered for defeating summary judgment, a verified pleading "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." For this reason, the Court will consider the factual allegations of Martin's complaint as testimony to defeat summary judgment.

disciplinary charge for failing to obey a direct order to extinguish the fire - despite that Defendant McMillian avers he gave Martin the direct order to extinguish the fire, that Martin refused to comply, and Defendant McMillian then radioed for back-up assistance. (Docs. 20-1 at 2; 20-2 at 1-10, 11). Also, because the record supports that there was visibility through Martin's cell door window, evidenced by Sergeant Bullard's statement that when he arrived at Martin's cell, he could see Martin sitting on his bed (Doc. 20-2 at 11) and Martin's statement that he could see the officers standing outside his cell door (Doc. 9 at 4), a reasonable juror could infer that the fire was already put out at the time Defendant McMillian entered his cell and that Defendant McMillian could not have mistakenly sprayed Martin in the face because he had a full view of him. Martin insinuates that the force used was excessive in his allegation that his cell was "trashed" and everything in his cell was ruined, and he has moved for photographs confirming his version of the incident. (*See* Doc. 22; *see also* Doc 20-2 at 11; Incident Report stating, "pictures of inmate Martin cell was taken for evidence purpose.(see attach photos)"; however, no photographs were produced with Defendant's submitted special report.). Furthermore, contrary to the single medical record cited by Defendant, another nursing note quotes Martin as reporting, "they sprayed my eyes". (Doc. 20-3 at 6). And Martin alleges that he was specifically asked by the treating physician, if the chemical spray to his face "was an accident?", to which Martin responded, "it was done on purpose." (Doc. 9 at 5). Notably, the record before the Court does not contain a document or chart notation confirming this communication; however, Martin has alleged under penalty of perjury that it transpired and has moved to discover notes taken by the doctor and to have such note(s) produced. (*See* Doc. 22). Martin has also moved to obtain photographs taken of his injuries following the incident. (*Id.*).

11

Indeed, it remains unclear from the record before the Court, at this time, whether there was a need for force and whether the force used was excessive – as the answer depends on the way the chemical agent, fire extinguisher, was used. *See Genao v. City of New York*, No. 21CV00303ATVF, 2023 WL 4633486, at *5 (S.D.N.Y. June 20, 2023), *report and recommendation adopted,* No. 21CIV303ATVF, 2023 WL 4625522 (S.D.N.Y. July 19, 2023) (citing cases explaining the context inquiry conducted by courts in determining the constitutionality of an officer's use of a chemical agent). These questions create genuine issues of material facts that cannot be resolved on summary judgment. *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) ("Summary judgment is not a time for fact-finding; that task is reserved for trial."). A reasonable jury could credit Defendant McMillian's version of the event and find that seeing smoke exiting from Martin's cell door created a safety risk that necessitated the use of chemical spray to protect the prison and restore order and may credit that any spray to Martin's face was unintentional. *See Beckford v. Portuondo*, 151 F. Supp. 2d 204, 216 (N.D.N.Y. 2001) (explaining that Eighth Amendment assault claim would fail if plaintiff was "not intentionally spray[ed]" but rather was "inadvertently" sprayed). Likewise, a reasonable jury could credit Plaintiff's version of the event that the fire was extinguished when Defendant McMillian arrived at his cell, and Defendant McMillian sprayed the chemical spray, not at a fire but at Martin's face. *Cf.*, *McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009) (The Eleventh Circuit has stated district courts should "approach the facts from the plaintiff's perspective because '[t]he issues . . . here concern not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of clearly established law.'" (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002)). If Martin's version of the event is credited, then the force used was malicious and for the purpose to cause harm. *See*

*Chatman v. Roy*, No. 2:17-cv-01952-AKK-SGC, 2019 WL 4621676, at *5 (N.D. Ala. Aug. 28, 2019) *report and recommendation adopted by* 2019 WL 4599929 (N.D. Ala. Sep. 23, 2019) (denying summary judgment where plaintiff alleged correctional officer sprayed plaintiff in the face with a fire extinguisher and the correctional officer failed to provide any explanation.). Consequently, the competing narratives are an issue of credibility, thus a factual issue, and a court may not grant summary judgment. *Sconiers,* 946 F.3d at 1263 (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1996)).

Not only has Martin created a factual issue to defeat summary judgment, but he has submitted sworn testimony, and the record supports, the existence of certain unproduced evidence which is relevant to the issues presented by Defendant's motion for summary judgment. Generally, early summary judgment is authorized in prisoner cases "to isolate and dispose of factually unsupported claims or defenses", *Celotex Corp. v, Catrett*, 477 U.S. 317, 323-24 (1986), where there is a "proper showing[] of the lack of a genuine, triable issue of material fact." *Id*. at 327.  Such is not the case here. Martin has described specific evidence that could support his opposition to summary judgment, namely photographs of his eye injury, photographs of his cell, and the attending physician's notes, and has moved for production of this evidence prior to the conversion of Defendant's Answer and Special Report to a motion for summary judgment. (*See* Doc. 22). Notably, these requests are tailored to the action, to Martin's burden of proof, and are either supported as existing per the Special Report or by Martin's sworn factual allegations in his verified complaint.[6] Because parties in federal civil cases are not entitled to

---

[6] Martin has also moved to discover disciplinary records related to Defendant McMillian and the actions he took on October 18, 2021. Martin notes that following the incident and initiation of this action, Defendant McMillian "has not been functioning as shift commander . . . on death row" but has been observed working at the front desk. (Doc. 21 at 2). This allegation,

discovery prior to a Rule 26 conference, *see* Fed. R. Civ. P. 26, Martin has not had the opportunity to conduct discovery in this action. Based on the specific facts of this case, summary judgment should not be entered until Martin has had an opportunity to conduct limited discovery relevant to his opposition of this motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5 (1986) (Summary judgment should "be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition."). Accordingly, the undersigned finds that it was premature to convert the Special Report and Answer to a motion for summary judgment and that summary judgment is not appropriate at this time. *But cf., Snook v. Trust Co. of Georgia Bank of Savannah, N.A.,* 859 F.2d 865, 871 (11th Cir.1988) ("Once there is an adequate record, the district court may again consider the defendants' motion for summary judgment.").

## IV.   CONCLUSION

Based on the foregoing, the undersigned recommends that summary judgment should be **DENIED**. Defendant McMillian is granted leave, however, to refile a motion for summary judgment for this Court's consideration following the development of an adequate record. The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, **by January 19, 2024**, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. §

---

however, is provided in an unsworn declaration that fails to comply with § 1746 and is therefore not being considered on summary judgment.

636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** and **ORDERED** this the **29th** day of **December 2023**.

                                             /s/KATHERINE P. NELSON
                                            **KATHERINE P. NELSON**
                                            **UNITED STATES MAGISTRATE JUDGE**